# PARMER vs. ANDERSON.

[SLANDER FOR WORDS SPOKEN CHARGING LARCENY.]

1. *Relevancy of words spoken after commencement of suit.*—In an action for verbal slander, the repetition of the slanderous words charged, or the speaking of other words which are of similar import, or which expressly refer to the words charged, after the commencement of the suit, is admissible evidence for the plaintiff, as tending to show malice ; *secus*, as to other words spoken after suit brought.

2. *When action lies.*—An action does not lie for the speaking of words, which, though actionable in themselves, are shown to have related to a known transaction, not amounting to the charge which the words would otherwise import; but this principle does not extend to cases in which the words, though spoken in reference to a transaction which did not amount to the . charge otherwise imported by them, were not known to the hearers to be spoken in reference to that transaction.

APPEAL from the Circuit Court of Montgomery. Tried before the Hon. S. D. HALE.

THIS action was brought by Seaborn Anderson, against William Parmer, to recover damages for the false and malicious speaking by the defendant, of and concerning the plaintiff, of certain words alleged to be "in substance as follows: 'Seaborn Anderson has stolen three of my negroes, and has them locked up in his house;' 'Seaborn Anderson stole my negroes, and I intend to prosecute him, and put him in the penitentiary for ten years;' 'Seaborn Anderson has stolen my negroes, and they are in his house now, and I intend to take out a search-warrant and take them out;' 'He has stolen my negroes, and has got them locked up in his house, and I mean to put him in the penitentiary for it;' 'Seaborn Anderson has stolen three of my negroes.'" The defendant pleaded not guilty, "in short by consent;" and a trial was had, on issue joined on this plea, at the May term, 1857.

On the trial, as appears from the bill of exceptions, the plaintiff introduced two witnesses, Anderson and Bozeman by name, who testified to the speaking by the defendant, on Sunday morning about Christmas, 1854, in the plaintiff's own yard, of the words charged; the former witness stating that the words spoken were, "He has three of my negroes stolen and locked up in his house, and I will put him in the penitentiary before to-morrow night for stealing;" the latter, that the words were, "He has stolen three of my negroes, and I will put him in the penitentiary for it." It appeared that the negroes, to which defendant's words related, were claimed by him under a deed from one Mrs. Moore, who was the aunt of his wife, as also of the plaintiff; that the title to them had been previously litigated, both at law and in equity, be-

tween Mrs. Moore and one Elijah Anderson, who was her brother; that the consideration recited in her deed to the defendant, which was introduced as evidence by the defendant, was his assumpsit and payment of the costs and attorney's fees incurred by her in these suits, and his promise to support and maintain her during her life; that Mrs. Moore had resided with the defendant for about eighteen months before the execution of this deed, which was dated the 15th September, 1854, but left his house a few months afterwards, and a few days before Christmas, 1854, and went to the plaintiff's house; that the negroes had been in the defendant's possession, and were on his plantation until the Saturday night before Christmas, 1854; that when discovered to be missing on the next morning, the defendant tracked them through the fields in the direction of the plaintiff's house, and found that other persons, on horseback, were in company with them; that he then returned, and requested several persons to go with him to the plaintiff's house, as witnesses of what might be said and done; that the plaintiff was absent when the party reached his house, but his wife and Mrs. Moore were there; that the defendant and one of his witnesses, on looking through a crack in one room of the house which was locked, saw the negroes there; that the defendant then requested the plaintiff's wife and Mrs. Moore to let him have the negroes, but they refused to do so; and that the slanderous words charged in the complaint, which, however, were differently stated by the several witnesses, were then and there spoken under the circumstances detailed.

The defendant introduced as a witness one Mastin, then the sheriff of Montgomery county, who testified, that the bill of costs mentioned in Mrs. Moore's deed to the defendant, "came into his ,hands for collection by execution; that he received the amount of said costs, which was $305, from one Hughes, his deputy; and that Hughes, when paying him the money, *said that he received said money from the defendant*." On the objection of the plaintiff, the court excluded from the jury that portion of

this testimony which is italicized; and the defendant excepted.

"The plaintiff, by way of rebuttal, introduced one Walton as a witness, who testified, that the defendant, on the evening of the 21st May, 1857, (which was the day before the trial in this cause was had,) in the streets of Montgomery, stated to him, *'that the plaintiff was a mean dog, and that all the Anderson family had sworn d—n lies against him.'* In offering this evidence, the plaintiff stated, that its object was to show malice in the defendant when he spoke the said words about Christmas, 1854." The defendant objected to this evidence, "on the ground that it was illegal and irrelevant;" and reserved an exception to the overruling of his objection.

The plaintiff then offered to prove by said Walton, "that Pickens Parmer, who was the defendant's son, came up to witness, in the presence of said defendant, in the streets of Montgomery, on the night of the day preceding this trial, and said to witness, that the plaintiff in this action had brought witnesses here to impeach his testimony, which, he (Pickens) said, was to be given before the jury in this case; that witness replied, 'No, I reckon not;' that said Pickens repeated, 'It is so; and that the defendant then said to Pickens, *' Take your knife, and cut his (plaintiff's) heart out—I am worth forty thousand dollars, and you shall not be hurt.'* In offering this evidence, the plaintiff stated, by his counsel, that its object was to show malice in the defendant when he spoke the said words about Christmas, 1854, which are above stated." The defendant objected to the admission of this evidence, "on the ground that it was illegal and irrelevant," and reserved an exception to the overruling of his objection.

There was other evidence in the cause, which, however, is immaterial to the points here presented for revision.

"The court charged the jury, among other things, that if they believed from the evidence that the plaintiff had feloniously taken the slaves from the defendant's premises, with a view to convert them to his own use, then he would be guilty of larceny; but, if the evidence satisfied them that he took said negroes from the defendant's premises,

asserting a *bona-fide* claim to them, either for himself or
for Mrs. Moore, and without a felonious intent, then he
would only be guilty of a trespass; and that if the words
were spoken only in relation to a trespass thus committed
by the plaintiff on the defendant, and not a larceny, then
the plaintiff could not recover."

"The defendant asked the court to charge the jury, that
if they believed from the evidence that the words com-
plained of by the plaintiff were spoken by the defendant
in reference to the taking away of the negroes from the
defendant's premises in the night-time, and their being
locked up next day at the plaintiff's house, and without
any other motive or intent; and that these acts superin-
duced the speaking of the words by the defendant, and
that without them the words would not have been
spoken by him; and further, that the plantiff did thus
take them away and lock them up in his house, or aided
and abetted in it, and, in so doing, was, under the in-
structions given by the court, guilty only of a trespass,
and no larceny or criminal offense,—then the plaintiff
could not recover, and their verdict must be for defendant."

The court refused to give this charge, and the defend-
ant excepted; and he now assigns as error all the rulings
of the court, as above stated, to which he reserved excep-
tions.

JAMES E. BELSER, and WATTS, JUDGE & JACKSON, for the
appellant, cited the following authorities:

1. To show that the court erred in admitting the portions
of Walton's testimony to which objection was made—
Watson v. Moore, 2 Cushing, 133; Bodwell v. Swan,
3 Pick. 376; Miller v. Kerr, 2 McCord, 285; Tate v.
Humphrey, 2 Camp. 73; Stuart v. Lovell, 2 Starkie, 63.

2. That the court erred in the refusal of the charge
asked—Kirksey v. Fike, 29 Ala. 206; Wright v. Lindsay,
20 Ala. 428; Norton v. Ladd, 5 N. H. 203.

ELMORE & YANCEY, with whom was A. G. FELDER, *contra*,
contended,—

1. That the testimony of Walton was competent evi-

dence, in rebuttal, as tending to show malice.—Long v. Rodgers, 19 Ala. Rep. 321; Teague v. Williams, 7 Ala. Rep. 844.

2. That the charge asked by the defendant asserted a broader proposition than was sanctioned by the authorities cited to sustain it.

RICE, C. J.—Without undertaking to comment upon the numerous cases relating to the admissibility, in an action of slander, of words spoken by the defendant after the commencement of the suit, we shall content ourselves with stating the conclusion upon the subject to which principle and authority have impelled us. A repetition of the slanderous words alleged in the complaint, or the speaking of words of similar import, or which expressly refer to those alleged in the complaint, after the commencement of the suit, is admissible. But they are admissible only for a defined purpose, that is, to show that the words charged in the complaint were spoken, *not heedlessly, but maliciously*. For that purpose, and to that extent, their admissibility rests upon satisfactory ground; because, if they are not, *per se*, "the evidence of a malicious heart brooding over its victim," they certainly must be treated as circumstances which *naturally and reasonably tend* to prove malice in the speaking of the words alleged in the complaint, or from which it may *naturally and reasonably be inferred.*" They must, therefore, be held admissible, inasmuch as malice in the speaking of the words charged in the complaint is regarded as the gist of the action, or essential to a recovery by the plaintiff.

But words spoken after suit brought, which are not a repetition, either in letter or substance, of those charged in the complaint, which are not of similar import, and which do not clearly refer to them, are not admissible. Thus, words spoken after action brought, which amount to a distinct slander, in imputing to the plaintiff a crime different from that imputed by the words alleged in the complaint, and which do not refer to those words, ought not be received.—Bodwell v. Swan, 3 Pick. 376; Watson v. Moore, 2 Cushing, 133; Finnerty v. Tipper, 2 Camp.

Parmer v. Anderson.

75; Teague v. Williams, 7 Ala. R. 844; Ware v. Cart-
ledge, 24 Ala. R. 622; 5 Phil. on Ev. (edition of 1849, by
Van Cott,) 246, 247, and notes; Miller v. Kerr, 2 McCord,
285.

The words, as charged in the complaint in this case,
impute to the plaintiff the crime of larceny—the stealing
of slaves. Words, spoken after action brought, imputing
to the plaintiff meanness and perjury, without any refer-
ence to the words charged in the complaint, are not
admissible. The court below erred, therefore, in permit-
ting the plaintiff to prove, by Walton, that on the day
preceding the trial, the defendant said to the witness,
"that the plaintiff was a mean dog, and that all the
Anderson family had sworn damn lies against him."
From them the inference is not a reasonable or natural
one, that he spoke the words charged in the complaint,
with malice.—See Scott v. Cox, 20 Ala. R. 294; Brock v.
The State, 26 Ala. R. 104.

The court erred, also, in admitting Walton to testify to
what was said in the interview on the night preceding the
trial, between the defendant, his son Pickens, and the
witness. What was said by the defendant on that occa-
sion, is evidence of *passion;* but, in law, *passion* is distin-
guished from *malice.*—The State v. Will, 1 Dev. & Batt.
From what the father did say on that occasion, the infer-
ence is not authorized, that the words alleged in the
complaint were spoken with malice.

[2.] There was no error in refusing the charge as asked
by the defendant. That charge does not conform to the
law as laid down in the authorities.—See Van Rensselaer
v. Dole, 1 Johns. Cases, 279; Trabue v. Mays, 3 Dana,
138; Pegram v. Styron, 1 Bailey, 595; Norton v. Ladd,
5 New Hamp. R. 203; 1 Starkie on Slander, (edition of
1852, by Wendell,) 99, and notes; Kirksey v. Fike,
29 Ala. R. 206; Henry v. Power, 10 Mees. & W. 564;
Hankinson v. Bilby, 16 Mees. & W. 442; Wright & Lind-
say, 20 Ala. R. 428.

The foregoing authorities show it to be settled, that the
defendant, in an action of slander, may show that the
words related to a *known* transaction, not amounting to

the charge which the words would otherwise import. But that is not the proposition asserted in the charge which was asked by the defendant in the present case. See Wright v. Lindsay, and other cases, *supra*.

As the question in relation to the admissibility of the declaration of the deputy sheriff Hughes may not be presented in the same shape on another trial, and as we must reverse the judgment for the errors above pointed out, we shall not pass on it.—See Harrison v. Harrison, 9 Ala. Rep. 73.

Judgment reversed, and cause remanded.